UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INSTITUTE FOR THE INTERNATIONAL EDUCATION OF STUDENTS, <br><br> Plaintiff, <br><br> v. <br><br> QIAN CHEN, et al., <br><br> Defendants. | No. 1:18-cv-02229-JRS-TAB |

**Order on Motion to Dismiss (ECF No. 21)**

Defendant International Education Foundation, Inc. ("IEF") moves to dismiss Counts II, III, and IV for failure to state a claim upon which relief can be granted and for failure to join a party under Rule 19. (ECF No. 21.) In the alternative, IEF moves for a more definite statement. (*Id.*) IEF's motion, now fully briefed and ripe for decision, is **denied** for the following reasons.

### I. Background[1]

Plaintiff Institute for the International Education of Students ("Plaintiff") provides study abroad programs, international internships, customized programs, and direct enrollment study abroad opportunities to students worldwide. (Compl. ¶ 2, ECF No. 1-2 at 7.) In March 2017, Plaintiff merged with The Study Abroad Foundation, Inc. ("SAF"). (*Id.* ¶ 3.) As the surviving entity, Plaintiff owns all SAF's assets. (*Id.*) On October 31, 2017, Plaintiff and its affiliates acquired SAF-IUNS, a Hong

---

[1] Consistent with the Rule 12(b)(6) standard, Plaintiff's non-conclusory allegations are taken as true for purposes of IEF's motion to dismiss.

1

Kong company engaged in the recruitment of students in China exclusively on behalf of SAF. (*Id.* ¶ 4.) Plaintiff relies on the goodwill it generates through its representatives' contact with universities and member schools in the United States, China, and elsewhere. (*Id.* ¶ 8.) Plaintiff maintains strict confidentiality of sensitive student information, member school information, business information, program leads, and other information. (*Id.*)

Defendant Qian Chen ("Chen") began working for SAF as its Executive Director beginning July 5, 2016. (*Id.* ¶ 5.) Chen had access to confidential information about SAF and its sending and receiving schools, which information included customer leads, enrollment histories, pricing information, strategies, discounts provided and received, employee information, student information, and primary contact information. (*Id.* ¶ 12.) Chen further had access to SAF's marketing plans, recruiting methods, pricing information, strategies, enrollment figures, enrollment histories by institution, key school contacts, exclusive recruiting agreements and their terms, student information, employee information, customer lists, customer leads and information, revenues, programs, program costs, program margins, overall margins, cost information, commission information, markups, and know-how. (*Id.* ¶ 13.)

As SAF's Executive Director, Chen visited the offices of SAF-IUNS and met its employees, including Daniel Shen ("Shen"). (*Id.* ¶ 9.) Chen was aware that Shen's employment agreement with SAF-IUNS included a two-year non-compete agreement. (*Id.*) As Executive Director, Chen had contact with SAF's and SAF-IUNS's key contacts and primary customer representatives at their member schools in China,

their sending schools in China, and their receiving schools in the United States, Europe, the United Kingdom, and elsewhere. (*Id.* ¶ 10.)

Chen's employment with SAF ended February 2, 2017, when Chen and SAF entered into separation and non-disclosure agreements. (*Id.* ¶¶ 14–15.) The agreements provide that Chen be paid $30,833; that Chen not return to SAF's or its affiliates' property; and that Chen keep SAF's confidential information secret for five years. (*Id.* ¶ 15; *id.*, ex. 2, ¶¶ 4–6.)

The following month, Chen formed Defendant International Education Foundation, Inc. ("IEF"), which competes directly with Plaintiff. (*Id.* ¶ 5.) In September 2017, Chen, together with Shen, returned to SAF-IUNS's offices. (*Id.* ¶ 18.) There they met with SAF-IUNS employees, attempted to recruit the employees to Chen's and Shen's new companies, falsely told the employees that Plaintiffs would terminate all employees upon acquiring SAF-IUNS, and dissuaded the employees from meeting with Plaintiff's representatives to discuss the acquisition. (*Id.* ¶ 19.)

Chen, Shen, and IEF induced certain SAF-IUNS employees to solicit SAF's and SAF-IUNS's university partners and member schools on behalf of IEF. (*Id.* ¶ 20.) As part of this effort, Chen and IEF induced SAF-IUNS employees to use confidential information, to create an IEF website using SAF-IUNS resources, and to create and use deceptive email addresses. (*Id.* ¶¶ 46, 48.)

3

## II. Failure to State a Claim
## Rule 12(b)(6)

*A. Legal Standard*

To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering a Rule 12(b)(6) motion to dismiss, the court takes the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019). The court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "[I]f a plaintiff pleads facts that show its suit [is] barred . . . , it may plead itself out of court under a Rule 12(b)(6) analysis." *Orgone Capital*, 912 F.3d at 1044 (quoting *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995)); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (on a motion to dismiss "district courts are free to consider 'any facts set forth in the complaint that undermine the plaintiff's claim'") (quoting *Hamilton v. O'Leary,* 976 F.2d 341, 343 (7th Cir. 1992)).

*B. Counts II and III – Tortious Interference*

Plaintiff alleges claims against IEF for tortious interference with a contract and for tortious interference with a business relationship.[2] Under Indiana law,

---

[2] Plaintiff identifies its counts as "Intentional Interference with Contract or Relationship" and "Intentional Interference with Prospective Business Relationship or Advantage." IEF refers to the counts as "tortious interference with contract" and "tortious interference with business relationship." The labeling does not affect whether Plaintiff has stated a claim. *See N.A.A.C.P. v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992) ("Identifying legal theories may assist defendants and the court in seeing how the plaintiff hopes to prevail, but this organization does not track the idea of 'claim for relief' in the federal rules. Putting each legal theory in a separate count is a throwback to

4

> The elements of an action for tortious interference with a contract are (1) existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach.
>
> In addition, it has been recognized that an action may lie under Indiana law for tortious interference with a business relationship even though there was no valid contract. In such cases, however, it appears to be critical that the defendant acted illegally in achieving his end.

*Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 641 (7th Cir. 1999) (quoting *Biggs v. Marsh*, 446 N.E.2d 977, 983 (Ind. Ct. App. 1983)).

1. Absence of justification

IEF contends that Plaintiff does not adequately allege absence of justification. The Complaint contains conclusory allegations: "Defendants' conduct was without justification" (Compl. ¶ 33) and "Defendants' conduct was without justification and unlawful" (*id.* ¶ 40). But it also contains substantive allegations tending to show the absence of justification, which allegations IEF's argument wholly ignores.

To determine whether interference with a contract is justified, Indiana courts consider the following factors:

    (a) the nature of the defendant's conduct;

    (b) the defendant's motive;

    (c) the interests of the plaintiff with which the defendant's conduct interferes;

    (d) the interests sought to be advanced by the defendant;

---

code pleading, perhaps all the way back to the forms of action; in both, legal theory and facts together created a 'cause of action.' The Rules of Civil Procedure divorced factual from legal aspects of the claim and replaced 'cause of action' with 'claim for relief' to signify the difference.")

5

    (e) the social interests in protecting the freedom of action of the defendant and the contractual interests of the plaintiff;

    (f) the proximity or remoteness of the defendant's conduct to the interference; and

    (g) the relations between the parties.

*Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228 (Ind. 1994) (quoting Restatement (Second) of Torts § 767 (1977)). At this stage, Plaintiff has pleaded enough facts to support its contention that IEF acted without justification. Specifically, Plaintiff alleges that IEF interfered with Plaintiff's exclusive recruiting contract with SAF-IUNS by commandeering SAF-IUNS employees, offices, email accounts, and other resources to recruit on behalf of IEF and interfered with Plaintiff's business relationships with its university partners and member schools by using the confidential information, the commandeered SAF-IUNS employees, and other resources to solicit business from those university partners and members schools.

    IEF further contends that Plaintiff has pleaded itself out of court by alleging that IEF interfered with the contracts and business relationships to compete with Plaintiff. But competition justifies interference only if, among other things, "the actor does not employ wrongful means." *See Computs. Unlimited, Inc. v. Midwest Data Sys., Inc.*, 657 N.E.2d 165, 169 (Ind. Ct. App. 1995) (quoting Restatement (Second) of Torts § 768 (1977)). The wrongful means alleged in the Complaint is not justified simply because IEF sought to enrich itself at Plaintiff's expense.

2. Illegal act

IEF argues that Plaintiff's claim for tortious interference with a business relationship fails because Plaintiff does not allege an illegal act. It is not clear what constitutes an "illegal act" under Indiana law. *See Syndicate Sales*, 192 F.3d at 641–42 (noting the lack of Indiana cases indicating that the predicate illegal act must be criminal); *Zimmer, Inc. v. Stryker Corp.*, No. 3:14-cv-152, 2014 WL 3866454 at *9 (N.D. Ind. Aug. 6, 2014) ("the Indiana courts have not defined 'illegality' in this context"); *CDW LLC v. NETech Corp.*, No. 1:10-cv-530, 2011 WL 3844160 at *5 (S.D. Ind. Aug. 26, 2011) ("Indiana courts have not provided significant guidance regarding what actions are sufficiently 'illegal' to be actionable.").

Plaintiff's allegations include defamation and breach of contract, which courts have held do not amount to illegal conduct for purposes of tortious interference with a business relationship under Indiana law. *See, e.g.*, *Levee v. Beeching*, 729 N.E.2d 215, 222–23 (Ind. Ct. App. 2000) (defamation not "illegal conduct" in this context); *Smith v. Biomet, Inc.*, 384 F. Supp. 2d 1241, 1251–52 (N.D. Ind. 2005) (breach of contract not "illegal conduct" in this context). But Plaintiff's allegations also support the inference that Chen and IEF conspired to misappropriate Plaintiff's confidential information, used that information to engage in unfair competition, and induced SAF-IUNS employees to breach their fiduciary duty to their employer. At this early stage, these allegations, considered holistically, are enough to survive a motion to dismiss. *See Zimmer*, 2014 WL 3866454 at *10 ("at this stage, the allegations that Stryker induced Stovall to breach his fiduciary duties to Zimmer, or conspired with Stovall to

7

do so . . . , are sufficient to survive a motion to dismiss"); *Meridian Fin. Advisors Ltd. v. Pence*, 763 F. Supp. 2d 1046, 1064 (S.D. Ind. 2011) ("[s]ufficiently 'wrongful' conduct, such as a breach of fiduciary duty, can satisfy the requirement of independent illegal action"); *CDW*, 2011 WL 3844160 at *5 (holding that adequate allegations of unfair competition satisfy "illegal action" element for purposes of motion to dismiss).

Because Plaintiff adequately alleges absence of justification and independent illegal action, IEF's motion to dismiss Counts II and III is **denied**.

## C. Count IV – Unfair Competition

IEF argues that the Indiana Uniform Trade Secrets Act ("IUTSA") preempts Plaintiff's claim for unfair competition because the allegations involve misappropriation of trade secrets. Plaintiff disagrees.

Whether the IUTSA displaces a common-law cause of action for unfair competition based on misappropriation of trade secrets is, of course, an issue of Indiana law. In determining issues of state law, federal courts apply the relevant decisions of the state's highest court and, if a question has not been resolved by that court, make a so-called "*Erie* guess"—a prediction of how the state's highest court would rule—based on the decisions of the state's intermediate courts, as well as persuasive decisions in other jurisdictions. *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 811–12 (7th Cir. 2018) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

The IUTSA provides that it "displaces all conflicting law of this state pertaining to the misappropriation of trade secrets, except contract law and criminal law." IND. CODE § 24-2-3-1(c). Despite this provision, federal courts interpreting Indiana law

8

have held that "a claim for unfair competition may be brought when the employee uses 'trade secrets or other information acquired during the course of his employment for his benefit or that of a competitor in a manner which is detrimental to his former employer.'" *Meridian Fin. Advisors, Ltd. v. Pence*, 763 F. Supp. 2d 1046, 1064 (S.D. Ind. 2011) (quoting *Woodward Ins., Inc. v. White*, 437 N.E. 2d 59, 67 (Ind. 1982)).

Those federal decisions all rely on *Woodward*. *See, e.g.*, *Zimmer*, 2014 WL 3866454 at *10 (quoting *Woodward*); *Biomet 3i, LLC v. Land*, No. 1:16-cv-125, 2017 WL 1483461, at *12 (N.D. Ind. Jan. 10, 2017) (citing *Woodward*); *Fan Action, Inc. v. Yahoo! Inc.*, 830 F. Supp. 2d 584, 591 (N.D. Ind. 2011) (citing *Meridian* and thus indirectly relying on *Woodward*). But *Woodward* did not address preemption—it was decided before the IUTSA even took effect.[3] Thus, it appears that the Indiana Supreme Court has not resolved the preemption issue.

At least one Indiana appellate court has held that the IUTSA's displacement provision preempts "all free-standing alternative causes of action" for misappropriation of trade secrets, as well as for misappropriation of "confidential, proprietary, or otherwise secret information falling short of trade secret status." *HD Net LLC v. N. Am. Boxing Council*, 972 N.E.2d 920, 924–26 (Ind. Ct. App. 2012) (quoting *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 235 P.3d 310, 319 (Haw. 2010)). On this reading, the IUTSA would preempt the sort of unfair competition claim acknowledged in

---

[3] *Woodward* was decided on July 19, 1982. *See* 437 N.E.2d at 59. The IUTSA was approved February 25, 1982, *see* 1982 Ind. Acts 1098, but under the then-current version of Indiana Code § 1-1-3-3, it did not take effect until September 1, 1982, *see* 1978 Ind. Acts 630 ("Each act passed at a regular session of the general assembly takes effect on September 1 next following its enactment, unless a different time is specified in the act").

9

*Woodward*, premised solely on misappropriation of trade secrets, as a "free-standing alternative cause of action."

But the IUTSA does not preempt all unfair competition claims. The Indiana Supreme Court continues to recognize "a cause of action for unfair competition, defined as the attempt to create confusion concerning the source of the unfair competitor's goods." *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598 (Ind. 2001) (internal quotation marks omitted). "Unfair competition is always a question of fact. The question to be determined in every case is . . . whether defendant, as a matter of fact, is by his conduct passing off his goods as plaintiff's goods, or his business as plaintiff's business." *Id.* (quoting *Hartzler v. Goshen Churn & Ladder Co.*, 104 N.E. 34, 37 (Ind. Ct. App. 1914)). Unfair competition, moreover, "does not describe a single course of conduct or a tort with specific elements; it instead describes a general category into which a number of new torts may be placed when recognized by the courts." *Id.* (quoting W. Page Keeton, *Prosser and Keeton on the Law of Torts*, 1015 (5th ed. 1984)).

Plaintiff's allegations regarding the misappropriation of its "customer information, sales leads and proprietary information" do not stand alone; they must be read together with allegations that Chen and IEF induced SAF-IUNS employees to pose as IEF employees, to create deceptive emails, to create an IEF website using SAF-IUNS resources, and to mislead university partners, customers, and others about their identity. Together, these allegations constitute the underlying facts supporting Plaintiff's unfair competition claim for "palming off." Because misappropriation of trade secrets (or other information) is not the gravamen of Plaintiff's unfair

10

competition claim, but merely part of the various underlying factual allegations, Plaintiff's unfair competition claim is not preempted by the IUTSA. *Cf. Patriot Homes, Inc. v. Forest River Hous., Inc.*, 489 F. Supp. 2d 865, 873 (N.D. Ind. 2007) (finding claims preempted only to the extent they depend solely on misappropriation of trade secrets); *Konecranes, Inc. v. Davis*, No. 1:12-cv-1700, 2013 WL 1566326, at *7–8 (S.D. Ind. Apr. 12, 2013) (finding unfair competition claim preempted where core allegations were misappropriation of confidential information).

IEF further argues that Plaintiff's "palming off" allegation fails to state a claim upon which relief can be granted because Plaintiff alleges that IEF identified itself as IEF, not as Plaintiff. But Plaintiff does not allege that IEF palmed off IEF's services as Plaintiff's; rather, Plaintiff alleges that IEF palmed off "Plaintiff's services as services of" IEF. (Compl. ¶ 48.) That is, Plaintiff accuses IEF of "reverse palming off" or "reverse passing off." Whereas palming off consists of passing off one's goods or services as those of another, reverse palming off consists of passing off another's goods or services as one's own. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 32 (2003) (describing passing off and reverse passing off in the context of the Lanham Act). IEF, in other words, passed off Plaintiff's services—provided by SAF-IUNS employees, using SAF-IUNS resources and Plaintiff's information—as if they were IEF's services. This claim is not precluded but rather supported by Plaintiff's allegations that IEF identified itself as IEF.

Accordingly, IEF's motion to dismiss Plaintiff's unfair competition claim is **denied**.

## III. Failure to Join a Party under Rule 19
## Rule 12(b)(7)

IEF also moves to dismiss under Rule 12(b)(7) for failure to join as parties Daniel Shen and unnamed SAF-IUNS employees (the "nonparties"). An action is subject to dismissal under Rule 12(b)(7) only if the unjoined party is both "required" under Rule 19(a) and indispensable under Rule 19(b).[4] *See Askew v. Sheriff of Cook Cty., Ill.*, 568 F.3d 632, 635 (7th Cir. 2009) ("Rule 19(a) addresses 'persons required to be joined if feasible,' and Rule 19(b) describes what the court must do if joinder is not feasible."). If the defendant fails to show that joinder of the nonparty is required under Rule 19(a)(1), then the motion to dismiss should be denied without reaching the Rule 19(b) inquiry.

Rule 19(a)(1) provides:

> (1) ***Required Party.*** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>>
>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>
>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>>
>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

---

[4] The 2007 Amendment to Rule 19 deleted the term "indispensable," but the term remains a useful shorthand for the Rule 19(b) inquiry,

12

Fed. R. Civ. P. 19(a)(1).

"A victim of wrongdoing is not generally required to sue all the wrongdoers. Certainly not in a tort case, where the rule of joint and several liability reigns; and not in a contract case either." *Rhone-Poulenc Inc. v. Int'l Ins. Co.*, 71 F.3d 1299, 1301 (7th Cir. 1995). Neither of IEF's arguments—invoking Rule 19(a)(1)(B)(i) and (ii)—justifies an exception to *Rhone-Poulenc* for this tort and contract case.

First, IEF contends that nonjoinder of the nonparties will impede the nonparties' abilities to "protect their interest in this issue," as they "could be bound by findings of fact and conclusions of law without opportunity to participate in their own defense." (ECF No. 22 at 9.) IEF does not explain how a judgment in this matter would bind the nonparties despite the "principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Taylor v. Sturgell*, 553 U.S. 880, 884 (2008); *see also Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110 (1968) ("Of course, since the outsider is not before the court, he cannot be bound by the judgment rendered.").

Second, IEF contends that, if judgment in this matter does not bind the nonparties, "there would be substantial risk that the dueling litigation would result in inconsistent obligations and decisions." (ECF No. 22 at 9–10.) A subsequent suit by Plaintiff against the nonparties could very well subject *the nonparties* to obligations inconsistent with obligations imposed on *the parties* in this matter. For example, it is possible that Chen is found not liable in this case but Shen, Chen's alleged joint

13

tortfeasor, is found liable in a subsequent case to which Shen is a party. But Rule 19(a)(1)(B) does not address such inconsistencies. Rather, it addresses inconsistent obligations imposed on *an existing party*—typically, those instances where one judgment requires the defendant to convey some *res* to X and another judgment requires the defendant to convey that same *res* to Y. IEF's argument does not raise any plausible concern that any *existing party* to this suit would be subject to substantial risk of inconsistent obligations because the nonparties have not been joined.

Accordingly, IEF's motion to dismiss under Rule 12(b)(7) is **denied**.

## IV. More Definite Statement
## Rule 12(e)

IEF moves, in the alternative, for a more definite statement under Rule 12(e). Plaintiff's Complaint provides IEF with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). There are, as IEF points out, various ambiguities in the Complaint, but it is not "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Such ambiguities that do not rise to the Rule 12(e) standard are more properly resolved through discovery. *See Gross v. Weinstein, Weinburg & Fox, LLC*, 123 F. Supp. 3d 575, 581 (D. Del. 2015) ("Motions for a more definite statement are generally viewed with disfavor, particularly where the information sought by the motion could easily he obtained by discovery."); *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1122 (E.D. Cal. 2012) ("Where the complaint is specific enough to apprise the responding party of the substance of the claim being asserted or where the detail sought is

14

otherwise obtainable through discovery, a motion for a more definite statement should be denied."). IEF's motion for a more definite statement is therefore **denied**.

## V. Conclusion

For the foregoing reasons, IEF's motion (ECF No. 21) is **denied**.

**SO ORDERED.**

Date: 5/2/2019

                                         JAMES R. SWEENEY II, JUDGE
                                         United States District Court
                                         Southern District of Indiana

Distribution:

QIAN CHEN
4667 Highland Court
Grandville, MI 49418

Candace A. Bankovich
LEWIS WAGNER LLP
cbankovich@lewiswagner.com

John A. Conway
SOUTHBANK LEGAL: LADUE CURRAN KUEHN
jconway@lck-law.com

Jacob R. Cox
COX LAW OFFICE
jcox@coxlaw.com

John David LaDue
SOUTHBANK LEGAL: LADUE CURRAN KUEHN
jladue@lck-law.com

Amanda L.B. Mulroony
HOOVER HULL TURNER LLP
amulroony@hooverhullturner.com

Celia Pauli
LEWIS WAGNER LLP
cpauli@lewiswagner.com

Wayne C. Turner
HOOVER HULL TURNER LLP
wturner@hooverhullturner.com