UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| INSTITUTE FOR THE INTERNATIONAL EDUCATION OF STUDENTS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:18-cv-02229-JRS-TAB |
| QIAN CHEN, et al., | ) ) | |
| Defendants. | ) ) | |

**Entry and Order on Various Motions**

Defendant Qian "George" Chen left his employment with The Study Abroad Foundation, Inc. ("SAF") and started a competing organization, Defendant International Education Foundation, Inc. ("IEF"). Shortly thereafter, Plaintiff Institute for the International Education of Students ("Plaintiff" or "IES Abroad") merged with SAF. Plaintiff alleges that the manner of Defendants' entry into the study abroad market constitutes a breach of Mr. Chen's separation and non-disclosure agreements, tortious interference with contract, tortious interference with prospective business relationship, and unfair competition. (Compl. ¶¶ 25–50, ECF No. 1-2.) Several motions are now pending.

## I.  Background

Among the motions pending is Defendants' motion for summary judgment. In keeping with the summary judgment standard, the facts are recounted here with all reasonable inferences drawn in favor of Plaintiff, the nonmoving party. (The parties

have also filed cross-motions for summary judgment on Defendants' counterclaims. The facts relevant to those claims are supplied as necessary in the course of the discussion of those motions.)

SAF was an Indiana non-profit corporation that provided study abroad opportunities, primarily sending students from China, Japan, and Korea to study at Western universities. (Mercier Decl. ¶¶ 4–5, ECF No. 85-2.) Plaintiff IES Abroad merged with SAF on March 23, 2017. (Mercier Decl. ¶¶ 5–7.) Mr. Chen served as SAF's executive director beginning in July 2016. (*Id.* ¶ 16.)

SAF International University Network Services Ltd. ("SAF-IUNS") was a Hong Kong company operating in China. (Mercier Decl. ¶ 7.) SAF and SAF-IUNS had interlocking directorships—David Gray was an owner and founder of SAF-IUNS, a founder of SAF, and a member of both organizations' boards. (Gray Decl. ¶¶ 1, 3.) SAF-IUNS agreed to work exclusively with SAF to recruit students for the benefit of SAF, and SAF controlled recruiting strategies in China, coordinated events for SAF-IUNS, shared information with SAF-IUNS, and was instrumental in setting the strategic goals for SAF-IUNS's efforts to provide support in China to SAF's programs. (Gray Decl. ¶¶ 5, 6; Mercier Decl. ¶¶ 9–10, 13–15.) SAF-IUNS handled all matters in China—recruiting students and maintaining relationships with the students' Chinese home universities. (Mercier Decl. ¶ 9.) SAF, on the other hand, handled matters relating to the Western host universities. (*Id.*) Daniel Shen served as the director of SAF-IUNS. (*Id.* ¶ 22.)

SAF terminated Mr. Chen's employment around January 20, 2017. (*Id.* ¶ 18.) Mr. Chen signed separation and non-disclosure agreements and received $30,833.32 in separation pay. Over the course of Mr. Chen's employment, SAF had provided confidential information to him by email, including SAF's business strategies, negotiation strategies, business plans, marketing plans, financial information, financial statements, budgets, forecasts, financial analyses, and audit and tax information. (*Id.* ¶ 21.) Having received a tip that he would be terminated, Mr. Chen downloaded his SAF emails to a thumb drive the day before his termination. (Chen Dep. 333:14–334:24, ECF No. 85-6.)

On February 6, 2017, Mr. Chen decided to start Defendant IEF, (Chen Dep. 36:19–23), and he formed IEF on March 1, 2017, (Chen Dep. 34:24–35:1). Around that same time, Shen told the SAF-IUNS management team—the associate director and managers of the Beijing, Shanghai, and Guangzhou offices—that Mr. Chen had informed him that IES Abroad planned to replace the SAF-IUNS management team after the upcoming merger between IES Abroad and SAF. (Tao Dep. 38:1–39:24.) Shen also told SAF-IUNS employees that he and Chen planned to start a company—called International Education Foundation or IEF—to compete with SAF-IUNS. (Tao Dep. 40:15–41:13, 43:12–21; Qin Dep. 14:15–24; Li Dep. 19:1–16, ECF No. 85-3.) Shen tried to recruit Tracey Tao, SAF-IUNS's associate director, and other SAF-IUNS employees to work for this new company over the ensuing months. (Tao Dep. 42:2–21, 49:11–21, 54:9–55:21, 59:8–24, 60:7–12.)

SAF-IUNS employee Sean Qin discussed this new company, IEF, with Chen over WeChat.  (Qin Dep. 16:1–5.)  Chen asked Qin to design business cards for IEF.  (Qin Dep. 17:5–10.)  Qin complied, designed the business cards during his employment for SAF-IUNS, and sent the design to Shen.  (Qin Dep. 17:5–18:3, 35:3–18.)  The business cards identify Chen as IEF's president and Shen as IEF's vice president.  (Qin Decl., Ex. A, Ex. B, ECF No. 85-1.)

Shen asked Qin to design IEF's website and to serve as an advisor for one of IEF's summer programs.  (Qin Dep. 18:13–18.)  Qin designed IEF's website, iefstudy.org, from May or June to August or September of 2017.  (Qin Dep. 19:9–16, 25:20–23.)  Qin spent about 100 hours designing the website, all during his normal working hours at SAF-IUNS.  (Qin Dep. 26:3–11.)

Shen asked SAF-IUNS managers to promote an IEF program—an IT English program at the University of Texas—with SAF-IUNS's Chinese home universities and to recruit students to that program.  (Tao Dep. 61:18–62:25.)  In the summer of 2017, at Chen's request, Qin recruited students for IEF from Chinese universities for the program at the University of Texas.  (Qin Dep. 18:19–22, 35:19–36:9.)  Qin recruited between ten and twenty students for the program on IEF's behalf during his normal working hours at SAF-IUNS.  (Qin Dep. 36:10–37:11.)

Shen sent materials about IEF's program to Chinese universities.  (Qin Dep. 37:12–19.)  The materials listed Qin's contact information—including his office line at SAF-IUNS's Beijing office—and Qin fielded students' calls and messages about the program.  (Qin Dep. 37:16–24, 39:23–40:11, 41:13–42:4.)  Qin spent about 100 hours

4

working on the program on IEF's behalf during his normal working hours at SAF-IUNS. (Qin Dep. 38:4–8.) Qin was not paid by IEF. (Qin Dep. 38:9–14.) All told, between March and September or October of 2017, Qin spent about fifty percent of his work time at SAF-IUNS on work for IEF. (Qin Dep. 42:10–43:2.)

On September 11, 2017, Shen and Chen visited SAF-IUNS's Beijing office to announce their new company, IEF. (Li Dep. 26:24–27:4.) All the office's employees were present. (Li Dep. 27:21–28:1.) Shen spoke first, then Chen. (Li Dep. 27:9–12.) Shen spoke about the business and operations of IEF, warned that SAF-IUNS employees' jobs were at risk due to the impending purchase by Plaintiff IES Abroad, and expressed his desire that the SAF-IUNS employees join IEF. (Li Dep. 28:4–9, 32:5–33:2.) Chen then addressed the group, stating that he would be responsible for the host university side of the company, and encouraging the SAF-IUNS staff to join IEF. (Li Dep. 29:9–16.) At Shen's and Chen's request, SAF-IUNS employee Kathy Li signed a "promise note to agree to join IEF." (Li Dep. 36:4–37:14.)

After the meeting, Chen, Shen, and the SAF-IUNS employees from the Beijing office flew to Shanghai and visited SAF-IUNS's Shanghai office. (Li Dep. 38:20–39:2; Tao Dep. 66:7–15.) Employees from SAF-IUNS's Guangzhou office were also present.

At the Shanghai office, Shen called a meeting. (Tao Dep. 67:19–23.) Shen spoke first, then Chen, then an SAF-IUNS employee. (Tao Dep. 67:23–25.) Shen told the gathered employees that the upcoming sale of SAF-IUNS to Plaintiff would jeopardize SAF-IUNS employees' jobs, informed the employees that he and Chen were form-

ing a new company, and called on the employees to commit to joining the new company.  (Tao Dep. 68:1–5, 70:8–16, 73:12–17.)  After Shen addressed the employees for five to ten minutes, Chen spoke for about five minutes.  (Tao Dep. 70:19–71:3.)  Chen echoed Shen's remarks.  (Tao Dep. 71:4–12.)  After the remarks, Shen distributed "promise notes" for the SAF-IUNS employees to sign.  (Tao Dep. 72:19–73:17.)

At the end of the Shanghai meeting, Shen announced IEF's official launch and arranged for a photograph of the SAF-IUNS staff, Shen, and Chen behind a banner that read, "IEF START UP."  (Tao Dep. 77:5–78:23; *id.*, Ex. 29.)  SAF-IUNS employee Sean Qin had designed and produced the banner at Shen's request.  (Qin Dep. 100:10–24.)

On September 22, 2017, Shen returned to SAF-IUNS's Shanghai office.  (Tao Dep. 80:12–19.)  He asked the staff to write down their log-in credentials for their laptop computers on sticky notes and stick them to the computers.  (Tao Dep. 83:11–16.)  He also told the staff to stop working and return home.  (Tao Dep. 81:24–82:2, 83:13–16.)  Shen then asked Tracey Tao to leave the office's documents with him.  (Tao Dep. 82:13–23, 85:14–20.)  Shen made off with the Shanghai office's registration certificate, its government approval to open a bank account, its rental contract, its business "chop," its financial "chop," another "chop," and a seal bearing the Shanghai office's banking information.  (Tao Dep. 88:14–90:15.) (In China, the "chop" is the office's seal necessary to transact business—to withdraw money, transfer money, or enter into a contract.  (Tao Dep. 84:18–85:13.))  Shen also took the office's computers.  (Tao Dep. 91:8–11.)

Plaintiff acquired the assets of SAF-IUNS on October 31, 2017. (Mercier Decl.
¶ 7; *id.*, Ex. B.) Additional facts are supplied as necessary in the discussion below.

## II. Motions to Strike

### A. Plaintiff's Motion to Strike Mr. Chen's Filings

For the first year and a half of this litigation, Mr. Jacob Cox represented both
Defendants, IEF and Mr. Chen. But in November 2019, Mr. Cox moved to withdraw
his appearance on behalf of Mr. Chen, indicating that Mr. Chen wished to represent
himself. (ECF No. 67.) That motion was granted, (ECF No. 70), and Mr. Cox's ap-
pearance on behalf of Mr. Chen was withdrawn. Mr. Cox continued to represent IEF.

Despite having withdrawn his appearance for Mr. Chen, Mr. Cox filed a motion
seeking summary judgment in favor of "Defendant International Education Founda-
tion, Inc ('IEF'), by counsel, *and Pro Se Defendant Qian Chen*." (ECF No. 80 at 1
(emphasis added).) It is sometimes efficient for multiple parties seeking the same
relief to move jointly, in a single filing. But here, the memorandum in support of
Defendants' motion contains arguments for judgment on the breach of contract
claim—a claim alleged only against Mr. Chen. (*See* ECF No. 81 at 7–11.) Despite
Mr. Cox's filings on Mr. Chen's behalf, Mr. Chen has since made several filings on his
own behalf. (*See, e.g.*, ECF Nos. 93, 94, 96, 100, 109, 115.) Plaintiff moves to strike
several of those filings. (ECF Nos. 95, 97, 113.)

The first filing at issue is a document styled, "Defendant Chen's Response in Sup-
port of Motion for Summary Judgment for the Dismissal of the Plaintiff's Complaint."
(ECF No. 93.) By the time Mr. Chen filed this document, the opening brief in support

of summary judgment had already been filed on his behalf by Mr. Cox, and Plaintiff

had already responded to that brief.  As founder and president of IEF, (*see* Chen Aff.

¶¶ 3–4, ECF No. 80-1), Mr. Chen presumptively controls IEF's participation in this

litigation, including its attorney's submissions on his behalf.  Having been filed after

Plaintiff's response, Mr. Chen's "response in support" is best construed as a reply.  By

its own terms, Mr. Chen's reply "supplements the arguments in the motion for sum-

mary judgment that all [c]ounts of Plaintiff's claims be dismissed." (*Id.*)  That is, his

reply presents arguments and evidence not raised in the opening brief filed on his

behalf.  Arguments not raised in an opening brief are waived.  *Wonsey v. City of Chi.*,

940 F.3d 394, 398 (7th Cir. 2019) ("This is a highly problematic strategy by Wonsey's

counsel given that arguments raised for the first time in a reply brief are waived.");

*Help At Home Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 753 n.2 (7th Cir. 2001) ("We

agree that HAH, by not making this argument in its opening brief, has waived the

issue.").  Plaintiff's motion to strike (ECF Nos. 95, 97) is **granted** to the extent that

the Court will not consider the arguments and evidence presented for the first time

in Mr. Chen's "response in support."  Mr. Chen also moves for leave to file a surreply

in opposition to the motion to strike. (ECF No. 100.)  Mr. Chen's motion for leave

(ECF No. 100) is **granted** to the extent that the Court has considered and rejected

the arguments presented in the proposed surreply.

Mr. Chen has also filed a reply in support of the cross-motion for summary judg-

ment filed on his behalf by Mr. Cox.  (ECF No. 109.)  In that document, Mr. Chen

alleges that Plaintiff and SAF-IUNS committed tax violations, and he disputes the

connection between himself, Shen, and IEF alleged by Plaintiff. He further contends that SAF-IUNS employees took the computers from the Shanghai office in order to destroy evidence of the tax violations. Mr. Chen's reply, which relies on facts in genuine dispute, ultimately does not alter the summary-judgment analysis, as Defendants' summary-judgment burden is to establish that there are no genuine disputes of material fact. Because the Court has considered Mr. Chen's reply and determined that it does not alter the outcome of the cross-motions for summary judgment discussed below, Plaintiff's motion to strike Mr. Chen's reply (ECF No. 113) is **denied** as moot.

The filing of documents on Mr. Chen's behalf by both IEF's attorney and Mr. Chen has disrupted the orderly administration of this case and generated undue disorder and confusion. "Representation by counsel and self-representation are mutually exclusive[.]" *Cain v. Peters*, 972 F.2d 748, 750 (7th Cir. 1992). Mr. Chen may represent himself or avail himself of an attorney, but he may not do both. *See United States v. Gwiazdzinski*, 141 F.3d 784, 787 (7th Cir. 1998) ("A defendant does not have an affirmative right to submit a pro se brief when represented by counsel.").

## B. *Defendants' Motion to Strike Plaintiff's Designated Evidence*

In their reply in support of summary judgment, Defendants move to strike several portions of Plaintiff's designated evidence, as well as Plaintiff's statement of facts.

### 1. Statement of Facts

Defendants move to strike Plaintiff's statement of facts for failure to comply with Local Rule 56-1. The motion is **granted** to the extent the Court has reviewed the

summary judgment record in full and, to the extent that any party's assertion lacks support in the record, the Court has disregarded the unsupported assertion.

2. Declaration of David Gray

Defendants move to strike the declaration of David Gray, contending that Gray was not among the witnesses disclosed by Plaintiff in the course of discovery. (Defs.' Reply 6–7.) David Gray's name does not appear in Plaintiff's initial disclosures or in Plaintiff's witness lists. (*See, e.g.*, ECF No. 114-4.) It does, however, appear in *Defendants'* initial disclosures and witness lists. (*See* Conway Decl., Ex. C, ECF No. 119-1 at 10; ECF No. 44.)

Defendants cite no authority in support of their argument that Gray's declaration should be excluded. However, Rule 37(c)(1) provides, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Assuming, for sake of argument, that Plaintiff's failure to disclose David Gray violated Rule 26, the violation was substantially justified or harmless.

A district court "need not make explicit findings regarding a justification or the harmlessness of the Rule 26 violation, but . . . the following factors should guide the district court's discretion: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Banister v. Burton*, 636 F.3d 828, 833 (7th Cir. 2011)

10

(quoting *Westefer v. Snyder*, 422 F.3d 570, 585 (7th Cir. 2005)).  It is difficult to see how Plaintiff's failure to name Gray could possibly result in prejudice or surprise to Defendants, who named Gray in their own disclosures and witness lists.  And the remaining factors also weigh against striking the declaration:  there is no prejudice to cure; trial is unlikely to be disrupted; and there is nothing to suggest bad faith or willfulness, as Plaintiff clearly was not trying to conceal Gray from Defendants, who, again, had themselves disclosed him as a witness.  Defendants' motion to strike Gray's declaration is **denied**.

3.  Declaration of Sean Qin

Defendants move to strike the declaration of Sean Qin, contending, first, that the business cards created by Qin (and attached as exhibits to his declaration) were not produced in discovery.  (Defs.' Reply 7.)  But the evidence establishes that they were, in fact, produced to both IEF's counsel and to Mr. Chen in November 2019, before the close of discovery.  (Conway Decl. ¶¶ 1–5, ECF No. 119-1; *id.*, Ex. A, Ex. B.)

Defendants further contend that Qin's declaration contradicts his deposition testimony.  According to Defendants, Qin testified at his deposition that he produced the business cards for Chen and not Shen but now states in his declaration that he produced the business cards for both.  Defendants cite no authority to support their argument.  But under the sham affidavit doctrine, affidavits "offered to contradict the affiant's deposition are so lacking in credibility as to be entitled to zero weight in summary judgment proceedings unless the affiant gives a plausible explanation for the discrepancy."  *Beckel v. Wal–Mart Assocs., Inc.*, 301 F.3d 621, 623 (7th Cir. 2002)

11

(citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806–07 (1999)).  The doctrine comes into play only where the contradictions are "so clear that the only reasonable inference [is] that the affidavit [is] a sham designed to thwart the purposes of summary judgment."  *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571 (7th Cir. 2015) (citing *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168–69 (7th Cir. 1996)).

Defendants' assertion that Qin's declaration contradicts his deposition testimony lacks support in the summary judgment record.  Defendants claim that Qin "testified during his deposition only that he worked on a business card for George Chen, and **not** Daniel Shen." (Defs.' Reply 7.)  Reading the cited portion of the transcript in context, Qin testified that he worked on the business card at Chen's request, but he sent the finished product to Daniel Shen.  (*See* Qin Dep. 17:24–18:3, 35:3–14.)  This is fully consistent with Qin's declaration, so the sham affidavit doctrine does not apply here.  *See Castro*, 786 F.3d at 571 ("DeVry's assertion that Florez's declaration contradicted his deposition testimony is the sort of assertion often made in summary judgment practice. In this case, the assertion is not supported by the record.").  Defendants' motion to strike Qin's declaration is **denied**.

4.  Shen's Out-of-Court Statements

Defendants contend that SAF-IUNS employees' testimony about statements made to them by Shen constitute inadmissible hearsay.  Plaintiff responds that Shen's statements fall within the hearsay exemption set forth in Federal Rule of Evidence 801(d)(2)(D).  Rule 801(d)(2)(D) provides that a statement is not hearsay if "[t]he

statement is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." In determining whether an out-of-court statement falls within Rule 801(d)(2)'s hearsay exemption, the "statement must be considered but does not by itself establish . . . the existence or scope of the relationship under (D)."  There is independent evidence that Shen acted as IEF's agent.  Qin testifies that he designed IEF business cards at Chen's request and sent those designs to Shen.  Those business cards identify Shen as IEF's vice president.  Qin further testifies that he designed IEF's website—iefstudy.org—at Shen's request.  Qin testifies that Shen had him recruit students and field inquiries from potential students for an IEF program.  SAF-IUNS employees testified that Shen attempted to recruit them to work for IEF.  SAF-IUNS employees testified that Shen, with Chen present, held meetings at SAF-IUNS offices to announce IEF's launch and urge SAF-IUNS employees to join IEF.

Chen maintains that his organization and Shen's organization are separate, unrelated entities.  A jury may ultimately accept that testimony.  But for purposes of summary judgment, Plaintiff has designated evidence to support a preliminary finding that Shen's out-of-court statements were statements made by IEF's agent on matters within the scope of that relationship and while it existed.  *See Bourjaily v. United States*, 483 U.S. 171, 176 (1987) ("[W]hen the preliminary facts relevant to Rule 801(d)(2)(E) are disputed, the offering party must prove them by a preponderance of the evidence."); *id.* at 175 ("The inquiry made by a court concerned with these matters

is not whether the proponent of the evidence wins or loses his case on the merits, but whether the evidentiary Rules have been satisfied."). Defendant's motion is **denied**.

5. Declaration of Amber Mercier

Finally, Defendants move to strike the damages calculation included as an exhibit to the declaration of Amber Mercier, IES Abroad's Vice President. Defendants contend that Mercier is not qualified to offer expert testimony on the topic and that Plaintiff did not disclose Mercier as an expert witness. Courts typically admit company officers' damages calculations as lay opinion testimony under Federal Rule of Evidence 701 where the claimed damages arise from disruptions to existing business operations known to the officer-witness, and not from the loss of some novel business venture. "In the realm of lost profits, lay opinion testimony is allowed in limited circumstances where the witness bases his opinion on particularized knowledge he possesses due to his position within the company. For example, the owner of an established business with a documented history of profits may testify to his expectation of continued or expanded profits when that opinion is based on his knowledge and participation in the day-to-day affairs of his business." *Von der Ruhr v. Immtech Int'l, Inc.*, 570 F.3d 858, 862 (7th Cir. 2009) (quotation marks, citations, and alterations omitted); *see also id.* at 863 (affirming exclusion of officer's testimony to "his expectation of millions of dollars in profits from a brand new drug, which had not been approved by the FDA, which still needed a corporate partner, and for which no competitive market analysis had been conducted."); *LifeWise Master Funding v. Telebank*,

374 F.3d 917, 929–30 (10th Cir. 2004) (collecting cases admitting damages calcula-

tions by company officers under Rule 701, but affirming exclusion of officer's testi-

mony where testimony was not based on experience as company officer but instead

entered "the realm of rolling averages, S-curves, and compound growth rates that

appear to be an amalgam of logic, hope, and economic jargon").

Mercier's damages calculation is not an extrapolation of sales of a new product or

service or of entry into a new market.  Rather, it purports to show a decline from

previous business activity, identifying specific lost sales.  This sort of testimony is

proper under Rule 701; as a company officer, Mercier appears to be competent to offer

such testimony; and Mercier declares that she prepared the damages analysis "based

on [her] personal knowledge and experience working at IES Abroad."  (Mercier Decl.

¶ 29.)

However, Defendants further argue that Mercier's analysis includes "inadmissible

factual assertions without citation to any factual record[s]."  (ECF No. 114 at 8.)  The

analysis does appear to rely principally on facts that are not otherwise supported by

the summary-judgment record, and the analysis itself is so sparse as to preclude any

determination of whether Mercier could offer admissible testimony to those underly-

ing facts.  (The notable exception is the University of Texas program—the record does

contain evidence that Qin worked on the program for IEF while employed by SAF-

IUNS.)  Defendants' motion is granted to the extent the Court has taken into consid-

eration the relevant deficiencies in Mercier's analysis in the discussion below.

### III.  Discussion

*A.  Plaintiff's Motion to Dismiss and Defendants' Motion to Amend Answer*

After moving to dismiss, but before filing their answer, Defendants set forth their counterclaims in a document entitled, "IEF's Counterclaims and Chen's Amended Counterclaims."  (ECF No. 27.)  (Mr. Chen had evidently filed counterclaims in state court prior to removal.)   Plaintiff thereafter filed its answer to the counterclaims. (ECF No. 30.)  After the Court denied Defendants' motion to dismiss, (ECF No. 50), Defendants filed their answer, (ECF No. 51).  Defendants' operative answer does not contain the counterclaims that Defendants had separately filed—and that Plaintiff had separately answered—months earlier.  Plaintiff moves to dismiss or strike Defendants' counterclaims, arguing that Defendants abandoned those claims by omitting them from their answer.  (ECF No. 73.)  Defendants move to amend their answer to include their already-separately-filed counterclaims.  (ECF No. 75.)

Leave to amend should be freely given when justice so requires.  *See* Fed. R. Civ. P. 15(a)(2).  Indeed, even during and after trial, "[t]he court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits."  Fed. R. Civ. P. 15(b)(1).

Plaintiff fails to satisfy the Court that permitting the amendment would prejudice Plaintiff.  Plaintiff has been actively defending the counterclaims throughout this litigation—filing an answer to the counterclaims, questioning Mr. Chen about the counterclaims at his deposition, and, most recently, moving for summary judgment on the

counterclaims.  Moreover, the subject matter of the alleged defamatory statements roughly coincides with Plaintiff's claims, so that, in pressing its own claims, Plaintiff also defends against Defendants' counterclaims.

Plaintiff further contends that Defendants must show "good cause" because their motion for leave to amend comes after the scheduling order's deadline for amendments to the pleadings.  *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").  Plaintiff contends that the deadline to amend the pleadings passed on December 20, 2018.  (ECF No. 77 at 2.)  But Defendants had not filed their answer—let alone any amendment—before December 20, 2018.  Defendants had instead filed a motion to dismiss, which the Court denied on May 2, 2019, after which, on May 16, 2019, Defendants filed their answer.  Thus, the December deadline was effectively rendered moot by the subsequent development of the litigation, and it does not appear that any further deadline for amendment of the pleadings was ever set.  Defendants' motion for leave (ECF No. 75) is **granted**, and Plaintiff's motion to dismiss or strike the counterclaims (ECF No. 73) is **denied**.  Defendants shall have fourteen days to re-file their proposed amended answer (ECF No. 75-1) as their amended answer.

## B.  Defendants' Motion for Summary Judgment on Plaintiff's Claims

Defendants move for summary judgment on Plaintiff's claims for breach of contract, tortious interference with contract, tortious interference with prospective business advantage, and unfair competition.  Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to

17

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the district court "must construe all the facts and reasonable inferences in the light most favorable to the nonmoving party." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017).  However, the district court must also view the evidence "through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment should be granted.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

1.  Breach of Contract

Plaintiff alleges claims for breach of contract arising from the separation and non-disclosure agreements between SAF and Mr. Chen.  Defendants move for summary judgment on those claims, contending (1) that SAF-IUNS was not an "affiliate" of SAF on or before Mr. Chen's visit to SAF-IUNS offices in September 2017, so that visit does not constitute a breach of the agreement, and (2) that the liquidated damages provision is an unenforceable penalty.

a.  "Affiliate"

Mr. Chen's separation agreement provides, in relevant part,

> You agree not to return to SAF or to its affiliates' property after today, and that any behavior by you that causes disruption to SAF or its affiliates, or to their respective operations, or that would constitute  a violation of applicable law or of SAF workplace policies if committed by an SAF employee, will result in this Agreement being rendered null, void and invalid.  In such an event, you agree by signing below to immediately repay to SAF all monies paid to you pursuant to this Agreement.

18

(Mercier Decl., Ex. C, ECF No. 85-2 at 36.)  Plaintiffs allege that Chen's September 2017 visit to SAF-IUNS offices constitutes a breach of this provision.  Defendants argue that SAF-IUNS was not an "affiliate" of SAF because Plaintiff did not purchase SAF-IUNS until October 31, 2017.

The contract does not define the term "affiliate."  Defendants cite two statutory definitions.  In the context of business combinations, Indiana law defines "affiliate" as "a person that directly, or indirectly through one (1) or more intermediaries, controls, is controlled by, or is under common control with, a specified person."  IND. CODE § 23-1-43-1.  In the context of takeover offers, Indiana law defines affiliate as "any person controlling, controlled by, or under the common control of another person."  IND. CODE § 23-2-3.1-1.  Plaintiff does not dispute Defendants' definitions of "affiliate."

Defendants contend that SAF-IUNS was not owned or controlled by SAF but merely an arms-length, independent contractor.  But Plaintiff has designated evidence to permit a reasonable inference that SAF exerted control over SAF-IUNS through interlocking boards and an exclusive recruiting contract, by setting recruiting strategies and quotas, and by otherwise directing SAF-IUNS operations.  A rational trier of fact could find that SAF-IUNS was an "affiliate" of SAF.

b.  Liquidated Damages

Mr. Chen's separation agreement provides,

> You understand that upon signing, if you breach any provision or obligation under this letter agreement or the attached NDA, you are responsible for payment of damages to SAF in an amount that is three times

> the amount received by you pursuant to the terms and conditions hereof,
> plus attorneys' fees, courts [sic] costs and other expenses incurred by
> SAF as a result of your breach.

(Mercier Decl., Ex. C, ECF No. 85-2 at 40.)   Defendants argue that this provision is

an unenforceable penalty, as it requires a minimum payment of roughly $92,500 for

any breach of the agreement, without regard to whether or to what extent such a

breach causes any actual damages to SAF.   Plaintiff responds that it is an enforceable

liquidated damages provision because it is proportionate to the actual damages suf-

fered by IES Abroad, and, at the time of signing, those damages were uncertain and

difficult to ascertain.

Indiana courts "have refused to enforce contracts when their provisions are un-

conscionable or when they offend the laws of this State, but there must be a clear

showing by the party urging it that the contract provision was nothing more than

mere penalty."   *Am. Consulting, Inc. v. Hannum Wagle & Cline Eng'g, Inc.*, 136

N.E.3d 208, 211 (Ind. 2019) (quoting *Court Rooms of Am., Inc. v. Diefenbach*, 425

N.E.2d 122, 124 (Ind. 1981)).   Defendants bear the initial burden to show the liqui-

dated damages provision is an unenforceable penalty.   *Id.*

Although damages here are difficult to ascertain, "this alone is not enough to en-

force a liquidated damages provision."   *Id.* at 212.   "Indiana adheres to the general

rule that, where a contract contains several stipulations of various degrees of im-

portance, the damages for the breach of some of which would be certain, and of others

uncertain, and a large sum is expressed in the agreement as payable on the breach

of any of the stipulations, such sum is to be regarded as a penalty, and not liquidated

20

damages." *Seach v. Richards, Dieterle & Co.*, 439 N.E.2d 208, 215 (Ind. Ct. App. 1982) (quoting *Jeffries v. Lesh*, 144 N.E. 881, 882 (Ind. 1924)).  In *Seach*, the contract prohibited the departing employee from contacting, advising, visiting or in any way soliciting, directly or indirectly, any client.  439 N.E.2d at 215.  "Even if no harm were to befall the Firm by Seach's 'contacting' a client, treble damages would be required." *Id.*  The Court of Appeals held that the provision was an unenforceable penalty.  *Id.* at 216.  Similarly, in *American Consulting*, one of the provisions fixed a single sum as damages "for a broad range of conduct" including soliciting or recruiting, or assisting anyone else in soliciting or recruiting, the employer's employees.  136 N.E.3d at 212–13.  Another provided a fixed sum as damages no matter whether the employee hired or merely attempted to hire the employer's employees.  *Id.* at 213.  The Indiana Supreme Court held that the liquidated damages provisions were facially unreasonable.  *Id.*

The contract here proscribes returning to SAF's or its affiliates' property, and any behavior that causes disruption to SAF or its affiliates or to their respective operations or would constitute a violation of applicable law or of SAF workplace policies if committed by an SAF employee.  (Mercier Decl., Ex. C.)  It further defines "Confidential Information" broadly and requires that Chen "keep Confidential Information secret," and that he not "disclose, publish or disseminate any Confidential Information to anyone, directly or indirectly, other [than] to his legal advisors with a need to know said information, provided that such persons agree to be bound by the obligations set forth in this Agreement, in writing and prior to disclosure."  (*Id.*)  It allows that

21

"George Chen may disclose Confidential Information if required by judicial or governmental request, requirement or order issued by a court, agency or official of competent jurisdiction, provided, however, that George Chen must first inform SAF with written notice of the receipt of the order or subpoena or request and a copy of the same within two (2) business days of receiving it." (*Id.*)

Despite the disparate, wide-ranging proscriptions and obligations, the agreement fixes the sum of roughly $92,500 as damages, plus attorney's fees and court costs, for breach of "any" provision. "Such provisions have been called 'Shotgun Clauses,' and are treated as inflicting penalties." *Seach*, 439 N.E.2d at 216. Defendants have therefore shown that the liquidated damages provision is facially unreasonable, and the burden shifts to Plaintiff to "show that the liquidated damages are somehow correlated with the actual damages." *Am. Consulting,* 136 N.E.3d at 213.

Plaintiff has submitted a "damages analysis" prepared by its Vice President, Amber Mercier, showing $111,785 in lost business "as a result of Defendants' wrongful conduct." (Mercier Decl. ¶ 29.) Though the claimed actual damages exceed the liquidated damages, there is nothing in Mercier's declaration to tie the lost business to breach of the contract. Mercier's declaration does discuss some injury caused by the alleged breach—for example, the time spent by Mercier and IES Abroad's CEO to deal with the "chaos" and disruption caused by Chen's visit to SAF-IUNS offices (which Plaintiff contends breached the agreement). But the declaration neither assigns a value to that lost time nor connects the lost time to the lost business itemized in the "damages analysis." Nor does the declaration tie the disruption to SAF-IUNS's

22

operations to the lost business.  The separation and nondisclosure agreements do not contain a noncompete provision, so without some showing that the lost business was a result of Chen's use of confidential information or disruption to SAF or its affiliates, the mere fact that $111,785 is greater than $92,500 does not discharge Plaintiff's burden to show some correlation between liquidated damages and actual damages.

Defendants are therefore entitled to summary judgment on Plaintiff's claim for liquidated damages.  Though the liquidated damages provision is unenforceable, Plaintiff may offer evidence of actual damages arising from the breach(es) at trial. *See Am. Consulting*, 136 N.E.3d at 214 ("In sum, we find that all of the liquidated damages provisions at issue are unenforceable penalties.  ASI may seek its actual damages for its breach of contract claims.").

2. Tortious Interference -- Absence of Justification and Illegal Act

Plaintiff alleges claims against IEF for tortious interference with contract and for tortious interference with a business relationship.  Under Indiana law,

> [t]he elements of an action for tortious interference with a contract are (1) existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach.
>
> In addition, it has been recognized that an action may lie under Indiana law for tortious interference with a business relationship even though there was no valid contract. In such cases, however, it appears to be critical that the defendant acted illegally in achieving his end.

*Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 641 (7th Cir. 1999) (quoting *Biggs v. Marsh*, 446 N.E.2d 977, 983 (Ind. Ct. App. 1983)).  Defendants argue

that summary judgment is warranted on Plaintiff's tortious interference claims because Plaintiff cannot establish absence of justification or an illegal act.

Some Indiana courts have stated that the "absence of justification" element is satisfied only if the interference is "malicious and exclusively directed to the injury and damage of another." *Am. Consulting*, 136 N.E.3d at 215 (quoting *Morgan Asset Holding Corp. v. CoBank*, *ACB*, 736 N.E.2d 1268, 1272 (Ind. Ct. App. 2000)). Defendants, relying on such language, contend that the purpose of their tortious interference was "to compete for business in a competitive market, and not solely to hurt Plaintiff." (Defs.' Mem. 13, ECF No. 81.) Although the excerpted language appears to support Defendants' argument, Indiana courts have consistently employed the Restatement factors to determine whether absence of justification has been established. *See Am. Consulting, Inc. v. Hannum Wagle & Cline Eng'g, Inc.*, 104 N.E.3d 573, 593 (Ind. Ct. App. 2018), *vacated on other grounds*, 136 N.E.3d 208. The Restatement suggests that courts should consider the defendant's motive, but motive is just one of seven factors, including, among other things, the nature of the defendant's conduct, the proximity of the defendant's conduct to the interference, and the relations between the parties. *See Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind. 1994) (quoting Restatement (Second) of Torts § 767 (1977)).

Moreover, where, as here, a defendant offers competition as purported justification for tortious interference, Indiana courts, following the Restatement, do not deem the interference justified if the defendant employed wrongful means. *See, e.g.*, *Rice v. Hulsey*, 829 N.E.2d 87, 91 (Ind. Ct. App. 2005) (quoting Restatement (Second) of

Torts § 768 (1977)); *Harvest Life Ins. Co. v. Getche*, 701 N.E.2d 871, 877 (Ind. Ct. App. 1998); *Computs. Unlimited, Inc. v. Midwest Data Sys., Inc.*, 657 N.E.2d 165, 169–70 (Ind. Ct. App. 1995). Here, a rational trier of fact could find that Defendants employed wrongful means—notably, inducing Shen and Qin to work surreptitiously for IEF while on SAF-IUNS's payroll—and that Defendants' conduct therefore lacked justification. Accordingly, Defendants have not shown that they are entitled to summary judgment on Plaintiff's tortious interference with contract claim.

Defendants further argue that summary judgment is warranted on Plaintiff's claim for tortious interference with a business relationship because Plaintiff cannot prove an illegal act. "Indiana courts have not provided significant guidance regarding what actions are sufficiently 'illegal' to be actionable." *CDW LLC v. NETech Corp.*, No. 1:10-cv-530, 2011 WL 3844160, at *5 (S.D. Ind. Aug. 26, 2011). However, federal courts applying Indiana law have held that inducing breach of fiduciary duty is enough. *See, e.g.*, *Zimmer, Inc. v. Stryker Corp.*, No. 3:14-cv-152, 2014 WL 3866454, at *10 (N.D. Ind. Aug. 6, 2014); *Meridian Fin. Advisors, Ltd. v. Pence*, 763 F. Supp. 2d 1046, 1063 (S.D. Ind. 2011). This Court held the same in ruling on Defendants' motion to dismiss, and Defendants do not cite any contrary authority now. There is evidence in the record to permit a rational trier of fact to find that Defendants induced Shen and other SAF-IUNS employees to breach their fiduciary duty to their employer and work on behalf of IEF—evidence, for example, that Shen recruited fellow SAF-IUNS employees to work for IEF and that Qin performed design work for IEF and

25

recruited students for an IEF program.  *See SJS Refractory Co., LLC v. Empire Re-fractory Sales, Inc.*, 952 N.E.2d 758, 768 (Ind. Ct. App. 2011) ("Prior to his termina-tion, an employee must refrain from actively and directly competing with his em-ployer for customers and employees and must continue to exert his best efforts on behalf of his employer.").  Defendants have not shown that they are entitled to sum-mary judgment on Plaintiff's claim for tortious interference with business relation-ship.

3.  Unfair Competition

Defendants argue that Plaintiff's unfair competition claim is preempted by the Indiana Uniform Trade Secrets Act, and that Plaintiff has failed to state a claim for "palming off."  These challenges to the sufficiency of the complaint were considered and rejected in the Court's order denying Defendants' motion to dismiss.  (*See* ECF No. 50.)  There may be reason to question the viability of Plaintiff's reverse-palming-off claim, but Defendants' opening brief wholly fails to address that claim.  Accord-ingly, Defendants have not shown that they are entitled to summary judgment on Plaintiff's unfair competition claim.

4.  Damages

Defendants contend that they are entitled to summary judgment on all Plaintiff's claims because Plaintiff cannot establish that Defendants' conduct proximately caused Plaintiff any damages.  As an initial matter, Defendants' argument does not address the $30,833.22 evidently paid to Mr. Chen under the separation and non-disclosure agreements.  Additionally, there is evidence in the record relating to the

26

University of Texas program that would permit a reasonable trier of fact to find damages caused by Defendants' alleged conduct. Defendants have not shown that they are entitled to summary judgment on all Plaintiff's claims for lack of evidence of damages.

### C. Summary Judgment on Defendants' Counterclaims for Defamation

Both Plaintiff and Defendants move for summary judgment on Defendants' counterclaims for defamation. Where, as here, the parties file cross-motions for summary judgment, courts "construe all inferences in favor of the party against whom the motion under consideration is made." *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561–62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

The only alleged defamatory statements at issue are "talking points" that Carol Carmody, Plaintiff's executive director, conveyed to representatives of various universities. Defendants contend that the statements are defamatory because they impute the conduct of Daniel Shen and his company to Mr. Chen and IEF. At the heart of the claims are Carmody's statements that Chen and Shen started a competing business, and that "in the course of starting this business," Shen stole from SAF and SAF-IUNS. Defendants argue that Plaintiff has no evidence that Mr. Chen stole anything. But the evidence is that Carmody said that Shen—*i.e.*, "the Director of SAF in China"—committed the theft, not Chen.

However, Defendants further argue that Carmody's statement that the thefts were committed "in the course of starting this business" falsely tied Shen's actions to

Defendants IEF and Chen.  The relationship between Shen, on the one hand, and Defendants IEF and Chen, on the other, remains genuinely disputed.  There is evidence tending to show that Chen and Shen coordinated their actions to start IEF— *e.g.*, the testimony of SAF-IUNS employee Sean Qin—as well as conflicting evidence to show a lack of such cooperation—chiefly, Chen's testimony.  It is for the jury to weigh the conflicting evidence.  Accordingly, a genuine dispute of material fact precludes summary judgment on Defendants' counterclaims.

## Conclusion

Defendants' motion for leave to amend their answer (ECF No. 75) is **granted**. Plaintiff's motion to dismiss Defendants' counterclaims (ECF No. 73) is **denied**.  Defendants shall have fourteen days to re-file their proposed amended answer (ECF No. 75-1) as their amended answer.

Plaintiff's motion to strike Mr. Chen's "response in support" (ECF Nos. 95, 97) is **granted** to the extent the Court has not considered the merits of the arguments and evidence presented in that filing.  Mr. Chen's motion for leave to file a surreply (ECF No. 100) is **granted** to the extent that the Court has considered and rejected the arguments set forth in the proposed surreply.  Plaintiff's motion to strike Mr. Chen's reply (ECF No. 113) is **denied** as moot.

Mr. Chen shall, within 14 days, file a notice stating whether he intends to proceed *pro se* or by counsel.  If Mr. Chen elects to proceed *pro se*, no further substantive filings shall be made on his behalf by IEF's counsel (with the exception of Defendants'

amended answer, as the proposed amended answer has already been filed).  If Mr. Chen elects to proceed by counsel, he shall make no further filings on his own behalf.

Defendants' motion for summary judgment on Plaintiff's claims (ECF No. 80) is **granted in part,** and Plaintiff may not recover liquidated damages on its breach-of-contract claim.  Defendants' motion is otherwise denied.  Plaintiff's motion for summary judgment on Defendants' counterclaims (ECF No. 78) is **denied**, and Defendants' cross-motion for summary judgment on those claims (ECF No. 88) is likewise **denied**.

**SO ORDERED.**

Date: 8/5/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

QIAN CHEN
4667 Highland Court
Grandville, MI 49418

Candace A. Bankovich
LEWIS WAGNER LLP
cbankovich@lewiswagner.com

John A. Conway
SOUTHBANK LEGAL: LADUE CURRAN KUEHN
jconway@lck-law.com

Jacob R. Cox
COX LAW OFFICE
jcox@coxlaw.com

John David LaDue
SOUTHBANK LEGAL: LADUE CURRAN  KUEHN
jladue@lck-law.com

Jonathan S. Lawson
SOUTHBANK LEGAL: LADUE CURRAN KUEHN
jlawson@lck-law.com

Amanda L.B. Mulroony
HOOVER HULL TURNER LLP
amulroony@hooverhullturner.com

Celia Pauli
LEWIS WAGNER LLP
cpauli@lewiswagner.com

Wayne C. Turner
HOOVER HULL TURNER LLP
wturner@hooverhullturner.com